IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PRIM LIMITED LIABILITY COMPANY, ET AL., | ) ) ) | CIVIL NO. 10-617 SOM/KSC |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART |
| vs. | ) ) | DEFENDANT/COUNTERCLAIMANT'S MOTION FOR PARTIAL SUMMARY |
| PACE-O-MATIC, INC.; | ) ) | JUDGMENT AS TO COUNTS III, IV, VI, AND VII |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT/COUNTERCLAIMANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AS TO COUNTS III, IV, VI, AND VII

I.      INTRODUCTION.

Plaintiffs Prim LLC and Prim Ltd. (collectively, "Prim") contracted to purchase and act as the distributor of electronic games such as "Island Fruit" supplied by Defendant/Counterclaimant Pace-o-Matic ("Pace").  After Pace terminated the exclusive distributorship provision of Prim's contract, Prim brought suit.  Currently before the court is Pace's motion for partial summary judgment on Counts III, IV, VI, and VII.  The court grants Pace's motion with respect to Counts IV, VI, and VII, and denies the motion with respect to Count III.

II.     **STATEMENT OF FACTS.**

On November 7, 2008, Pace and Prim entered into an agreement under which Prim became Pace's exclusive distributor for certain "amusement devices" in an area that included Hawaii.

Agreement Letter, ECF No. 237-5, PageID #3042.[1]  While the agreement was in effect, Prim purchased electronic "Island Fruit" games and "fills" from Pace.[2]  Second Amended Compl. ¶ 2.

On October 18, 2010, Pace sent Prim a letter alleging that Prim was in default and terminating the exclusivity portion of the agreement between Pace and Prim.  Pace's October 28, 2010 Letter, ECF No. 202-4, PageID # 2459.  On October 22, 2010, Prim filed the instant lawsuit.  See ECF Nos. 1.

At a hearing on October 26, 2010, the court questioned the legality of the Island Fruit machines under the Hawaii Revised Statutes' restrictions on gambling devices.  ECF No. 22. On February 25, 2011, the court repeated that concern.  Def's CSM ¶ 22; Pl.'s CSM ¶ 22.  On March 2, 2011, Pace sent Prim a letter saying that, "given the concerns that Judge Susan Mollway expressed about the legality of the Island Fruit game," Pace "is withdrawing the sale of its skill-based amusement products from the State of Hawaii."  Pace's March 2, 2011 Letter, ECF No. 202-

---

[1] The parties have failed to follow LR 56.1(c), which requires a party referring to a document in its Concise Statement of Facts to "have relevant portions highlighted or otherwise emphasized."  In addition, the parties have not consistently followed LR 10.2(d), which requires appropriately labeled tabs for exhibits.  These oversights created extra burdens on the court.

[2] "Fills" are electronic codes that "permit a certain number of plays" on an Island Fruit game "before an owner needs to input a fill to permit the game to continue operating." Second Am. Compl. ¶ 14, ECF No. 79.

2.  Pace continued: "To the extent Prim disagrees with Pace's conclusion and wants to continue operating the Island Fruit game in Hawaii at its own risk, Pace is willing to provide Prim with an unlimited fill for its existing games in Hawaii, at cost." Id.

On August 30, 2011, Prim filed its Second Amended Complaint.  ECF No. 79.  Prim asserted the following eight causes of action: (1) breach of contract; (2) tortious interference with prospective business advantage; (3) unfair methods of competition in violation of section 480-2 of the Hawaii Revised Statutes; (4) violation of Hawaii franchise law under chapter 482E of the Hawaii Revised Statutes; (5) breach of express warranty; (6) breach of the implied warranty of merchantability; (7) breach of the implied warranty of fitness for a particular purpose; and (8) a right to indemnification.  Id.

On August 8, 2012, Pace filed a motion for partial summary judgment on Prim's unfair competition (Count III), franchise (Count IV), and implied warranty claims (Counts VI and VII).  ECF No. 199.  The court grants the motion as to Counts IV, VI, and VII, but not as to Count III.

III.     SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

3

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." In such a case, the nonmoving party may defeat the

motion for summary judgment without producing anything.  <u>Nissan Fire</u>, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  <u>Miller</u>, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial."  <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d 885, 891 (9th Cir. 2005) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>California v. Campbell</u>, 319 F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  <u>Miller</u>, 454 F.3d at 988 (quotations and brackets omitted).

IV.      ANALYSIS.

   A.   **Summary Judgment is Denied with Respect to Count III.**

Count III alleges that Pace engaged in unfair competition in violation of section 480-2 of the Hawaii Revised Statutes.  Second Am. Compl. ¶¶ 76-80, ECF No. 79.  With respect to Count III, Pace's motion appears to be a combination of a motion for judgment on the pleadings and a motion for summary judgment.

Pace's first argument—that Prim fails to sufficiently plead the nature of the alleged unfair competition—in essence seeks dismissal rather than summary judgment.  Pace's Motion for Partial Summary Judgment ("Motion") at 23-24, ECF No. 199.  The court is not persuaded that Count III should be dismissed under the circumstances.

Section 480-2(a) of the Hawaii Revised Statutes provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

Prim relies on the unfair competition prong of the statute, which, unlike the unfair or deceptive practices prong, is not limited to claims by consumers or public enforcers.  Davis v. Four Seasons Hotel Ltd., 2010 WL 3946428, at *6 (D. Haw. Sept. 30, 2010).  A claim for unfair methods of competition must adequately "allege the nature of the competition."  Davis v. Four

Seasons Hotel Ltd., 122 Haw. 423, 446, 228 P.3d 303, 326 (2010). This requirement "is consistent with the federal requirement that a plaintiff allege that his or her injury reflects the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation." Id. (internal citations and alterations omitted).  Simply put, the plaintiff's complaint must present "the principles of causation" for the alleged injury.  Id. at 438, 228 P.3d at 318.

Prim's pleading alleges that "Pace's actions and conduct have caused damage to Prim's business or property and are likely to continue to result in damage to Prim in an amount exceeding $75,000, exclusive of interest and cost."  Second Am. Compl. ¶ 80, ECF No. 79.  The only allegations about the nature of the unfair competition that caused damage to Prim are contained in paragraphs 42 and 43, which state:

> 42.  Also on or about October 19, 2010, Pace terminated PRIM's exclusive access to fills within the territory, and advised that Pace would henceforth sell directly to PRIM's customer, Nickels & Dimes.

> 43.  On information and belief, on or after October 19, 2010, Pace sold game fills directly to Nickels & Dimes.

Id.  These allegations are not expressly referred to in Count III, but Prim incorporates by reference paragraphs 1 through 75 in Count III.

7

This court has previously complained about "puzzle" pleadings that require the court to figure out which of many allegations incorporated by reference actually "fit" into a particular count.  See Order Granting Prim's Motion to Dismiss Counts IV and V of Pace's Amended Counterclaim at 12-14, ECF No. 137.  To the extent Count III is based on paragraphs 42 and 43, it clearly is a prime example of the very format this court was complaining about.  Nevertheless, on this purported summary judgment motion, the court, out of fairness to Prim, declines to make a ruling applicable only to motions to dismiss (such as a determination that "puzzle" pleadings are inherently defective, which, despite this court's complaints, would be a broader ruling than this court has previously announced).

Pace also challenges Count III on the true summary judgment ground of a lack of evidence indicating that Pace engaged in unfair competition that caused damage to Prim.  But Prim does submit evidence that Pace was marketing games directly to Nickels & Dimes, a Prim customer.  Pace does not dispute this evidence.  Instead, citing Kapunakea Partners v. Equilon Enterprises, LLC, 679 F. Supp. 2d 1203, 1211 (D. Haw. 2009), Pace claims that this is nothing more than a breach of the exclusive distributorship agreement, and that a mere breach of contract does not support a section 480-2 claim.

Kapunakea says that, when a section 480-2 claim is based on a breach of contract, that breach must be accompanied by substantial aggravating circumstances to justify the treble damages recoverable for a section 480-2 violation. Id. at 12. Pace does not address the issue of whether the necessary aggravating circumstances are present when the way an exclusive distributorship agreement is allegedly breached is by a supplier's direct sale to the exclusive distributor's customer. There are many ways in which an exclusive distributorship agreement could be breached; the supplier could, for example, supply a competing distributor. When the supplier itself takes on the role of a competitor and seeks to do business with the exclusive distributor's customer, it may indeed be that that is an aggravating circumstance sufficient to support a claim under section 480-2. The court need not determine that here. It was Pace's burden as the movant to establish otherwise, and Pace did not address that issue at all, much less meet that burden. The summary judgment motion is denied as to Count III.

**B.    Pace is Entitled to Summary Judgment on Count IV.**

Count IV alleges that Pace violated Hawaii's Franchise Investment Law by failing to deal with Prim in good faith and by terminating Prim's franchise without good cause. Second Am. Compl. ¶¶ 81-95. Prim asserts that Pace granted Prim a license to distribute Pace's games in its territory. Opp'n at 11. Prim

9

says, "While the 2008 Distribution Agreement was not specifically called a license agreement, it allowed PRIM to use Pace's name, trademarks and propriety software which are the hallmarks of a licensing agreement." Id. Prim also says that it paid a franchise fee to Pace because it paid for fills to "license the Island Fruit games and keep the Island Fruit games operating." Id. at 12. Pace argues that it is entitled to summary judgment because there was never a franchise between Prim and Pace and that Prim never paid a franchise fee. Motion at 14-19. Concluding that there was neither a franchise agreement nor a franchise fee, the court grants Pace summary judgment on Count IV.

Before the "court can consider whether any franchise was terminated, the court must determine if there was any franchise at all." JJCO, Inc. v. Isuzu Motors America, Inc., 2009 WL 1444103, at *3 (D. Haw. 2009), aff'd, 2012 WL 2584294 (9th Cir. July 5, 2012). Under Hawaii law, a franchise consists of an agreement "in which a person grants to another person, a license to use a trade name, service mark, trademark, logotype or related characteristic . . . and in which the franchisee is required to pay, directly or indirectly, a franchise fee." Haw. Rev. Stat. § 482E-2.

Prim has failed to show that there is a triable issue as to whether there was a franchise between Prim and Pace. Id.

Prim's characterization of the 2008 Distribution Agreement as allowing "PRIM to use Pace's name, trademarks and propriety software," Opp'n at 11, is at odds with the actual text of the 2008 Distribution Agreement.  The 2008 Distribution Agreement nowhere provides that Prim may use Pace's name.  <u>See</u> ECF No. 49-3, PageID # 290.  Nor does any of the text in the 2008 Distribution Agreement suggest that Pace was authorizing Prim to "use" Pace's trademarks or proprietary software.  <u>Id.</u>  Rather, the 2008 Distribution Agreement, which is tellingly titled, "Re: Distributorship," makes clear that Pace was only authorizing Prim to "purchase games and fills from Pace and exercise its best efforts to develop markets for the games and distribute the games."  <u>Id.</u>

A distributorship is not the same thing as a franchise relationship.  The Ninth Circuit has distinguished the right to distribute or make wholesale sales of a product from the right to use a company's trademarks.  <u>Gabana Gulf Distribution, Ltd. v. Gap Int'l Sales, Inc.</u>, 343 Fed. App'x 258, 259 (9th Cir. 2009) ("The undisputed facts show that Gabana was merely a distributer or wholesaler of Gap <u>products</u>, but not substantially associated with Gap's <u>trademarks</u>.").  The 2008 Distribution Agreement allowed Prim to distribute Pace's <u>products</u>; it did not "substantially associate" Prim with Pace's <u>trademarks</u>.  <u>Id.</u>  The very essence of a franchise relationship is that the franchisee

represents the franchise to the public; a franchise is not created whenever one company purchases and distributes another company's products.  Thus, a drug store may sell brand name products manufactured by many pharmaceutical companies without being a franchisee of any pharmaceutical company.

Nor is the court persuaded by Prim's assertions that it paid a franchise fee to Pace.  A franchise fee "means any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement." Haw. Rev. Stat. § 482E-2.  A franchise fee does not include, however, "the purchase or agreement to purchase goods at a bona fide wholesale price." Id.  As this court has explained, "The guiding principle is that, unless the expenses result in an unrecoverable investment in the franchisor, they should not normally be considered a fee."  JJCO, Inc., 2009 WL 1444103, at *4 (citations and quotations omitted).

There is no evidence in the record that Prim paid Pace a franchise fee.  Prim contends that its payment for "fills" constituted a franchise fee because "the price of the fills far exceeds the cost of a few keystrokes to generate a fill."  Opp'n at 13.  Pace's profit margin is not proof that Prim's payment for fills constituted a franchise fee.  Hawaii law does not provide that a distributor's profit on a distributorship agreement

12

transforms a relationship into a franchise.  Moreover, there is
no evidence that the cost of the fills constituted an
"unrecoverable investment" in Pace.  See <u>JJCO, Inc.</u>, 2009 WL
1444103, at *4.  The court therefore concludes that the record
does not show that there is a question of fact as to whether Prim
paid a franchise fee.  Prim's Count IV fails.

> **C.   Pace is Entitled to Summary Judgment on Counts VI and VII.**

Counts VI and VII allege that Pace breached implied
warranties when it sold the Island Fruit machines to Prim.
Second Am. Compl. ¶¶ 104-18.  Counts VI and VII are pled in the
alternative, and, as Prim itself notes, will come into play only
if Island Fruit is found to be illegal under Hawaii law.  <u>See</u>
Opp'n at 15.  If Island Fruit is illegal, however, it is not
clear why this court should enforce any implied warranty with
regard to Island Fruit.  <u>See, e.g.</u>, <u>Inlandboatmen's Union of the
Pac. v. Sause Bros., Inc.</u>, 77 Haw. 187, 881 P.2d 1255 (Ct. App.
1994) (noting that illegal contracts are generally
unenforceable).

Prim is not arguing that the game is illegal.  Prim has
repeatedly punted on this question.  Nor does Prim identify how
Counts VI and VII add anything to the contract claim asserted in
Count I.

Prim does not explain how it could ever prevail on
Counts VI and VII.  If the items in issue are legal, Counts VI

13

and VII become irrelevant.  Prim does not show that, if the items
are illegal, the implied warranties on which Counts VI and VII
are based will be enforceable.  Pace's argument is that the
implied warranties either are inapplicable or were not breached
even if the game is illegal.  Prim's response is that, even if
illegal, the game still came with implied warranties of
merchantability and fitness for a particular purpose.  But Prim,
which has the burden of proving the viability of its implied
warranty claims, does not sufficiently address the issue of
whether implied warranties are applicable if the product is
illegal.  Prim instead pivots to an off-topic discussion of
express warranties of legality it says Pace provided.  Opp'n at
17.  That is, Prim simply asserts or assumes that its breach of
implied warranty claims are viable.  Prim's assumption would
allow an implied warranty claim by a drug user who paid for
cocaine but received "bunk."  Because Prim fails to meet its
burden as the claimant of establishing a right to enforce any
implied warranty concerning an illegal game, the court grants
summary judgment to Pace on Counts VI and VII.[3]

**V.       CONCLUSION.**

---

[3] Because it is basing this ruling on Prim's failure to
meet its burden, the court need not determine whether implied
warranties may or may not apply to illegal goods or services.

The court grants Pace's motion for summary judgment as to Counts IV, VI, and VII, and denies the motion as to Count III.

//

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 13, 2012.



  /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Prim, et al. v. Pace-o-Matic, CIV. NO. 10-00617 SOM/KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT/COUNTERCLAIMANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS III, IV, VI, AND VII.