IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PRIM LLC, ET AL., | ) | CIVIL NO. 10-617 SOM/KSC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER DENYING |
| vs. | ) | DEFENDANT/COUNTERCLAIMANT'S |
| | ) | MOTION FOR PARTIAL SUMMARY |
| PACE-O-MATIC, INC., | ) | JUDGMENT AS TO COUNTS V AND |
| | ) | VIII |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |

**ORDER DENYING DEFENDANT/COUNTER-CLAIMANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS V AND VIII**

I.      INTRODUCTION.

      Plaintiffs Prim LLC and Prim Ltd. (collectively, "Prim") contracted to purchase and distribute electronic games such as "Island Fruit" from Defendant/Counterclaimant Pace-o-Matic ("Pace").  After Pace terminated the exclusivity provision of Prim's contract, Prim brought suit.  Currently before the court is Pace's motion for partial summary judgment on Counts V and VIII.  The court concludes that factual disputes preclude the granting of Pace's motion.

II.      **STATEMENT OF FACTS.**

      A.      **Facts Relevant to Count V (Breach of Express Warranty).**

      On November 7, 2008, Pace and Prim entered into an agreement regarding an exclusive distributorship arrangement for certain "amusement devices."  Agreement Letter, ECF No. 237-5,

PageID #3042.  While the agreement was in effect, Prim purchased electronic "Island Fruit" games and "fills" from Pace.  Second Amended Compl. ("SAC") ¶ 2.

On October 18, 2010, Pace sent Prim a letter alleging that Prim was in default and terminating the exclusivity portion of the agreement between Pace and Prim.  Pace's letter of October 28, 2010, ECF No. 202-4, PageID # 2459.  On October 22, 2010, Prim filed the instant lawsuit.  See ECF No. 1.

On October 26, 2010, the court expressed concern that "Island Fruit," one of the "amusement machines" that Pace sold to Prim, might qualify as an illegal gambling machine under Hawaii Revised Statutes.  ECF No. 22.  On March 2, 2011, Pace sent Prim a letter saying that, "given the concerns that Judge Susan Mollway expressed about the legality of the Island Fruit game," Pace "is withdrawing the sale of its skill-based amusement products from the State of Hawaii."  Pace's letter of March 2, 2011, ECF No. 202-2.  Pace continued: "To the extent Prim disagrees with Pace's conclusion and wants to continue operating the Island Fruit game in Hawaii at its own risk, Pace is willing to provide Prim with an unlimited fill for its existing games in Hawaii, at cost."  Id.

On August 30, 2011, Prim filed its Second Amended Complaint ("SAC").  ECF No. 79.  Prim asserted the following eight claims: (1) breach of contract; (2) tortious interference

with prospective business advantage; (3) unfair methods of competition in violation of section 480-2 of Hawaii Revised Statutes; (4) violation of the Hawaii franchise law under chapter 482(E) of Hawaii Revised Statutes; (5) breach of express warranty; (6) breach of the implied warranty of merchantability; (7) breach of the implied warranty of fitness for a particular purpose; and (8) indemnity.  Id.

The breach of express warranty claim (Count V) alleges that Pace expressly warranted that the Island Fruit games were legal.

**B.   Facts Relevant to Count VIII (Indemnity).**

Before the Agreement Letter between Pace and Prim was executed, Nickels & Dimes had been purchasing amusement games and fills directly from Pace.  Nickels & Dimes Compl. ¶ 10, ECF No. 256-6.[1]  In 2009, Pace informed Nickels & Dimes that Fun Factory, an entity related to Prim, would be the new supplier of fills for Island Fruit.  Id. ¶ 14.

In October 2009, a Nickels & Dimes competitor reportedly operated an amusement machine similar to Island Fruit with a "Max Play Cost" higher than the "Max Play Cost" on Nickels & Dimes' Island Fruit machines.  Id. ¶ 16.  In response, Nickels & Dimes set its "Max Play Cost" at $4.  Id.  Nickels & Dimes also

---

[1] The Nickels & Dimes Complaint was filed by Nickels & Dimes in Civ. No. 10-0082 in the United States District Court for the District of Hawaii (the "N&D Matter") on February 19, 2010.

alleges that a Fun Factory employee subsequently lowered the "Max Play Cost" for Nickels & Dimes' Island Fruit games and refused to raise that amount back to $4.  Id. ¶ 17.  Nickels & Dimes further alleges that the lower "Max Play Cost" increased the price Nickels & Dimes had to pay for fills.  Id. ¶ 19.  Nickels & Dimes also alleges that Fun Factory required the "Max Play Cost" to be set at $1 for new purchases of fills at another Nickels & Dimes location.  Id. ¶ 21.

Nickels & Dimes sued both Pace and Fun Factory for violating the Sherman Act and asserted claims for unfair and deceptive trade practices and injunctive relief.  Id. 25-36.  Fun Factory filed an Amended Answer and Cross-Claim, which included a claim for indemnification against Pace.  N&D Matter Cross-Claim, ¶¶ 7-12, ECF No. 256-7.

In its Cross-Claim, Fun Factory alleged that "Pace agreed to indemnify and hold companies, including Fun Factory, harmless from legal actions resulting from the Island Fruit electronic games."  Id.  Fun Factory also alleged that it "lodged a timely demand to Pace for indemnification of costs, including attorneys fees, arising form this litigation."  Id. ¶ 10.  Fun Factory further alleged, "In response, Pace agreed that Pace was obligated to indemnify and hold Fun Factory harmless from all claims arising from this lawsuit including the payment of attorney's fees."  Id. ¶ 11.

Pace negotiated a settlement with Nickels & Dimes that included the dismissal of all claims against Pace and Fun Factory. Brown Decl. ¶ 3, ECF No. 256-1. On May 18, 2011, during a status conference in the N&D Matter, the parties stipulated to (1) dismissal of the N&D Matter; and (2) consolidation of Fun Factory's remaining indemnification claim against Pace with this case. Id. ¶¶ 4-5.

In this case, Fun Factory's claim for indemnification alleges:

> 120. On or about February 19, 2010, Nickels and Dimes ("N&D") filed a complaint alleging that cross claimant Fun Factory, committed violations of the Sherman Act and used unfair trade practices while purportedly acting in concert with Pace. These allegations arise from the operation of Island Fruit electronic games.
>
> 121. Fun Factory is and has incurred attorney's fees, court costs, investigative costs and other costs in connection with defending said complaint, the exact amount of which cannot be known until the end of the case.
>
> 122. Fun Factory lodged a timely demand to Pace for indemnification of costs, including attorney's fees, arising from this litigation.
>
> 123. In response, Pace agreed that Pace was obligated to indemnify and hold Fun Factory harmless from all claims arising from this lawsuit including the payment of attorneys' fees.

>    124. Fun Factory is entitled to complete indemnification by Pace for any sum or sums for which it may be adjudicated liable to plaintiffs, together with costs of defense, costs of suit, and reasonable attorney's fees.

SAC ¶¶ 120-24.

Fun Factory offers two main pieces of evidence in support of its allegations. First, Fun Factory points to an email exchange between Linda Fernandez, Fun Factory's then-President, and Ron Carrara, Pace's then-Vice President of Sales and Marketing (the "Email Conversation"). Fernandez's portion of the Email Conversation said:

>    As to this lawsuit from Tilt, we look to you to deal with the situation and hold us harmless. Pace brought the trouble to us due to Dan Trueblood's mistake. There would be no issue had the game been set up as agreed upon. Please advise.
>
>    The publicity will not be a good thing for anyone, them included. Talk about throwing the baby out with bath water.

ECF No. 304-5. Carrara replied: "I agree. Back to you later."
Id.

Fun Factory also refers the court to a letter dated August 17, 2010, sent by its lawyers to Pace. The letter asserted that Pace had "agreed to defend and indemnify our client companies and their personnel" with respect to the N&D Matter. See Letter re: N&D Matter, ECF No. 280-11. The letter stated:

>    You have given us assurances that all attorneys' fees would be paid by Pace-O-

>Matic, Inc. and that our client companies and their personnel would be held harmless. We are concerned that you may attempt to renege on your promise. Please accept this letter as a continuation of our clients' demand to indemnify, defend and hold Fun Factory, Inc. and 50th State Coin-Op harmless from and against any and all liabilities, costs, damages, and expenses (including reasonable attorneys' fees) incurred by Fun Factory, Inc. and/or 50th State Coin-Op in the above-referenced lawsuit.
>
>To confirm your intent to live up to your promise, before the close of business on Friday of this week, please let us know what plans you have in place to:
>
>>1)   pay attorneys' fees and costs incurred by my clients in defense of this suit; and
>>
>>2)   pay any settlement or judgment arising out of this suit.

Id.

In summary, the present motion seeks summary judgment with respect to two claims. Count V, which is pled in the alternative to Counts I through IV, asserts a claim for breach of express warranty. See SAC ¶¶ 96-103. Count VIII asserts a claim for indemnity. See id. at ¶¶ 119-24.

**III.      SUMMARY JUDGMENT STANDARD.**

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of

summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan Fire, 210 F.3d at 1102-03. On the other hand, when the moving

party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987. This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

**IV.    ANALYSIS.**

   **A.   Pace is Not Entitled to Summary Judgment on Count V.**

Count V alleges that Pace breached an express warranty to Prim and Fun Factory that its Island Fruit games were legal under Hawaii law.  SAC ¶¶ 96-103, ECF No. 79.

Count V, which is pled in the alternative, therefore only comes into play if the Island Fruit games are illegal.  Pace argues that it is entitled to summary judgment on Count V for the same reasons this court awarded Pace summary judgment with respect to Counts VI and VII in its Order of December 14, 2012.  Motion at 16.  In that Order, the court reasoned: "If Island Fruit is illegal, however, it is not clear why this court should enforce any implied warranty with regard to Island Fruit.  See, e.g., Inlandboatmen's Union of the Pac. v. Sause Bros., Inc., 77 Haw. 187, 881 P.2d 1255 (Ct. App. 1994) (noting that illegal contracts are generally unenforceable)."  Order at 13, ECF No. 244.  The court further stated that Prim failed to establish that an implied warranty claim based on a contract for illegal goods is enforceable if the Island Fruit games are illegal.  Id. at 14.

Prim argues that, even if the games are illegal, Prim's express warranty claim survives if the contract is facially valid.  Opp'n at 27-28.  Prim says that "the *contract* itself is susceptible to lawful or unlawful performance by Pace depending on the nature of the goods delivered which is entirely within

10

Pace's control and knowledge." Id. at 27. Prim concludes: "In this respect, a contract valid on its face, but resulting in an illegal good may still be enforced." Opp'n at 28.

       In some respects, Count V does raise concerns akin to those the court addressed with respect to Counts VI and VII in its Order of December 14, 2012. That is, Count V is only applicable if the Island Fruit games are illegal. As this court has already indicated in the Order of December 14, 2012, however, if a game is illegal, it is not clear why this court should enforce any agreement with regard to it. See, e.g., Inlandboatmen's Union of the Pac. v. Sause Bros., Inc., 77 Haw. 187, 881 P.2d 1255 (Ct. App. 1994) (noting that illegal contracts are generally unenforceable). See also Keegan v. Am. Honda Motor Co. Inc., 833 F. Supp. 2d 929, 949 (C.D. Cal. 2012) ("An express warranty is a term of the parties' contract."). This court made no actual ruling that Island Fruit was or was not legal, and, despite questioning the enforceability of a contract relating to an illegal game, did not actually rule that a contract concerning an illegal game was or was not enforceable.

       Despite some similarities to the implied warranty claims in Counts VI and VII, however, the express warranty claim in Count V is distinguishable because, unlike implied warranties that may exist as a matter of law, an express warranty is entirely dependent on its express terms, which may be unique.

Under Hawaii law, express warranties are made by the seller when:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Haw. Rev. Stat. § 490:2-313.  In a breach of express warranty claim, Prim must prove that (1) Pace made an affirmation of fact or promise regarding the product, (2) that statement became part of the basis of the bargain, and (3) the product failed to perform according to the statement.  Neilsen v. Am. Honda Motor Co., Inc., 92 Haw. 180, 190-91, 989 P.2d 264, 274-75 (Haw. App 1999).

It is not at all clear that there was an express warranty.  The Agreement Letter between the parties makes no mention of an express warranty, ECF No. 49-3, and the record reveals that the parties extensively discussed the issue of whether the Island Fruit games were legal.  See Warren Asing Dep. at 33-43.  Prim says that Pace "assured" Prim "that this game is skill based, and there shouldn't be a problem with this game, at all, from the Vice squad."  Id. at 33.  Despite this assurance,

12

the record also reveals that the parties also made jokes about being "locked up" because of these games.  See id. at 35.

Given this record, there is a question of fact as to whether there was any express warranty and, if there was, exactly what it stated or indisputably warranted.  The court sees no reason to hypothesize an express warranty and is no position to resolve on the present record any dispute about what, if anything, was expressly warranted.  The existence and precise terms of any express warranty are the foundation of Count V.  At this time, the court denies summary judgment as to Count V.

### B. Pace is Not Entitled to Summary Judgment on Count VIII.

Count VIII alleges that Fun Factory is entitled to complete indemnification by Pace.  SAC ¶¶ 119-24.

Pace begins by arguing that Fun Factory has no standing to bring this claim.  To have constitutional standing, a plaintiff must establish the following three elements: (1) an injury in fact; (2) causation; and (3) a likelihood that a favorable decision will redress the plaintiff's alleged injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Fun Factory alleges that (1) it incurred various fees and costs (2) that were caused by the N&D matter, and that (3) it is entitled to indemnification by Pace for its fees and costs.  SAC ¶¶ 119-24.  While Pace contends that Fun Factory suffered no injury, Pace does not establish that Fun Factory incurred no attorneys'

13

fees and costs in the course of the litigation it was involved in. Fun Factory alleges that those fees and costs were necessitated by Pace's alleged failure to keep its promise to indemnify Fun Factory. The settlement of the N&D Matter did not resolve Fun Factory's underlying claim for indemnification, and Fun Factory has standing to go forward.

In asserting that Fun Factory lacks standing, Pace relies on <u>District of Columbia v. Jeppsen ex rel. Jeppsen</u>, 514 F.3d 1287 (D.C. Cir. 2008). That case is inapposite. In that case, the district court held that the Individuals with Disabilities Education Act does not authorize a school district to recover from a parent such private school tuition or other expenses as a district has paid in connection with a disabled child's education. The district court dismissed the case as moot, then ruled that it lacked jurisdiction to award attorneys' fees to the parent given the dismissal of the underlying claims for lack of jurisdiction. <u>Id.</u> at 1289. On appeal, the D.C. Circuit reversed the district court's determination that it lacked jurisdiction, stating that "this case gives us no occasion to decide whether a defendant who obtains a dismissal for want of jurisdiction may be awarded attorneys' fees absent a statute conferring subject matter jurisdiction over her fee petition." <u>Id.</u> Pace would have been hard-pressed to pick a more inapposite case.

The single line in <u>Jeppsen</u> that Pace quotes does not compel a different conclusion. Pace quotes the following half of a sentence from <u>Jeppsen</u>: "when intervening events have mooted the plaintiff's underlying claim, the plaintiff's continuing interest in attorney's fees does not support her continued standing to pursue the underlying claim." <u>Id.</u> This half-sentence does not have any bearing on the present case because here the substance of Fun Factory's underlying claim has not been mooted.

Pace's reliance on <u>Cramer v. John Alden Life Insurance Co.</u>, 763 F. Supp. 2d 1196, 1207 (D. Mont. 2011), is similarly unavailing. <u>Cramer</u> involved a plaintiff injured in a car accident. The plaintiff hired an attorney to resolve claims arising from the accident. <u>Id.</u> at 1202. The court held that Cramer's prelitigation and litigation-related attorneys' fees did not "provide the basis for establishing standing" because Cramer had received all the benefits she was due under her insurance plan before she filed her lawsuit. <u>Id.</u> at 1206. Thus, the substantive objective of Cramer's lawsuit -- getting benefits for claims related to the accident -- was already accomplished independent of the attorneys' fees she accrued in connection with the litigation. By contrast, Fun Factory's claim for indemnification was an independent claim that was not resolved when the N&D matter settled.

Having determined that Fun Factory has standing to bring its claim for indemnification, the court now turns to the issue of whether Pace is entitled to summary judgment on Count VIII.

In Hawaii, an "agreement to indemnify another is an agreement by one person to safeguard or hold another harmless from loss or damage as may be specified in the agreement, or in which the indemnitor promises to reimburse his or her indemnitee for loss suffered." Johns v. Wright-Scott, 2012 WL 2022370, at *2 (D. Haw. 2012). "A party's rights to indemnity can rest on three bases: (1) an express contract; (2) a contract implied-in-fact; or (3) equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied-in-law." Id. at *3.

Pace says that there was no express indemnity contract, that there was no consideration for an indemnity contract, and that there is no material issue of fact supporting an implied-in-fact contract. Motion at 27-31. Prim argues that Ron Carrara, Pace's then-Executive Vice President of Sales and Marketing, "advised plaintiffs that Island Fruit was a game of skill (and thus legal to operate in Hawaii) and promised Fun Factory that it would be defended and indemnified concerning the Nickels & Dimes matter." Opp'n at 12. Carrara's alleged representations are ambiguous. It is unclear whether the words "I agree" were

16

intended by Carrara to signify agreement to indemnify Prim. Immediately preceding "I agree" were Prim's assertion that publicity would not be good for anyone and a reference to throwing the baby out with the bath water.  The court cannot, on the present record, tell whether Carrara was agreeing, for example, that publicity would be detrimental.

For this court to grant summary judgment on Count VIII, this court must determine that there was an indemnification agreement and that its terms were definite.  The record does not indisputably establish the existence or nonexistence of an indemnity agreement, or its terms.  Questions of fact preclude summary judgment as to Count VIII.

**V.      CONCLUSION.**

For the foregoing reasons, the court denies Pace's motion for summary judgment as to Counts V and VIII.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 23, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Prim, et al. v. Pace-o-Matic, CIV. NO. 10-00617 SOM/KSC; ORDER DENYING DEFENDANT/COUNTERCLAIMANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS V and VIII